USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 06/27/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER BURGOS a/k/a ERIC BURGOS,

    Plaintiff,

v.

UNITED STATES OF AMERICA and FEDERAL BUREAU OF PRISONS,

    Defendants.

No. 16-CV-7091 (RA)

MEMORANDUM OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Christopher Burgos a/k/a Eric Burgos brings this medical malpractice action against the United States of America and the Federal Bureau of Prisons (together, the "Government") under the Federal Tort Claims Act ("FTCA"). Before the Court is the Government's motion to transfer the case to the District of New Jersey. For the reasons that follow, the motion is granted.

### BACKGROUND[1]

This case concerns medical treatment that Plaintiff received while he was incarcerated at the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"). *See* Am. Compl. ¶¶ 8–17. While he was an inmate there, Plaintiff fractured his left scaphoid bone during a game of baseball. *Id.* ¶ 9. On or about December 12, 2014, Plaintiff underwent surgery to repair the injury. *Id.* ¶¶ 9–10. During the surgery, metal plates and screws were implanted into his left wrist. *Id.* ¶ 10. Plaintiff had a serious allergic reaction to the metals in the implants, which caused him to develop urticaria, angioedema, and contact dermatitis over most of his body. *Id.* ¶¶ 12–13.

---

[1] The following facts are taken from the Amended Complaint and the declarations submitted in connection with this motion. *See Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 23 n.1 (S.D.N.Y. 2016).

1

Plaintiff alleges that the Government never tested him to determine whether he was allergic to the metals, that the Government failed to have him sign an informed consent prior to the surgery, and that the Government provided inadequate post-operative care by failing to properly address the allergic reaction. *Id.* ¶¶ 11, 14(2)–16.[2] Plaintiff left FCI Fairton on June 30, 2015. Angud Decl. ¶ 5 & Ex. A. He currently resides in the Bronx, Am. Compl. ¶ 5, and in November 2016, he underwent a second surgery to remove the implants from his wrist at Bronx-Lebanon Hospital Center, *id.* ¶ 17; Laufer Decl. Ex. A; *see also id.* Ex. B ("Burgos Aff."), at 3.[3]

While Plaintiff was incarcerated at FCI Fairton, he received medical treatment from in-house clinicians and off-site specialists in the local community. Angud Decl. ¶¶ 6–7. All of his off-site care appears to have been provided in New Jersey. Prior to the 2014 surgery, Plaintiff was seen by an orthopedist at Cohanzick Orthopedics, P.A. in Bridgeton, New Jersey. *See id.* Ex. C, at 15, 111–14; Teleanu Decl. ¶ 2 & Ex. A. The surgery itself was performed by Dr. Sean Bidic, whom Plaintiff saw before and several times after the surgery and whose office is located in Vineland, New Jersey. *See* Angud Decl. Ex. C., at 1, 10–11, 80–95, 100–03; *id.* Ex. D, at 2–4, 96, 148–51, 190–92, 207–08, 217–20, 223–24; Teleanu Decl. ¶ 4 & Ex. C. After the surgery, Plaintiff also saw Dr. Peter Sarkos, an orthopedist at Premier Orthopaedic Associates (which has offices in Vineland, Elmer, Mullica Hill, and Woolwich, New Jersey), and Dr. Robert Coifman, an allergist at Allergy & Asthma of South Jersey, P.A. (which has offices in Millville and Galloway, New Jersey). *See* Angud Decl. Ex. D, at 29–31, 154–65, 173–89, 213–14; Teleanu Decl. ¶¶ 6, 8 & Exs. E, G. The off-site providers who treated Plaintiff are not Government employees; they provide

---

[2] The Amended Complaint contains two paragraphs that are numbered "14." The Court refers to them as "14(1)" and "14(2)," respectively.

[3] Citations to the Laufer Declaration's exhibits and Plaintiff's opposition brief reflect the pagination assigned by the Court's Electronic Case Filing ("ECF") system.

specialty care to FCI Fairton inmates pursuant to a contract between the Bureau of Prisons and NaphCare, Inc., a non-party entity that partners with local clinicians. Angud Decl. ¶ 7.

## DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The party requesting transfer bears the burden of establishing by clear and convincing evidence that transfer is warranted. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). Nevertheless, "[d]istrict courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

In deciding a motion to transfer venue, the inquiry is two-fold. "First, the court must determine whether the action could have been brought in the proposed transferee forum." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016). Second, "the court must . . . determine whether transfer is appropriate." *Id.* In determining whether transfer is appropriate, courts consider several factors, including:

> (1) the locus of the operative facts; (2) convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances.

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006). "The factors do not comprise an exclusive list, and they should not be applied mechanically or formulaically but rather to guide the Court's exercise of discretion." *Matthews v. Cuomo*, No. 16-CV-4210 (NRB), 2017 WL 2266979, at *2 (S.D.N.Y. May 1, 2017).

3

Plaintiff does not dispute that this case could have been brought in the District of New Jersey. Thus, the only question before the Court is whether transfer is appropriate.

The Court concludes that it is. "[L]ittle or nothing connects this case to New York other than Plaintiff's domicile," *Larca v. United States*, No. 11-CV-3952 (JMF), 2012 WL 6720910, at *3 (S.D.N.Y. Dec. 16, 2012), and cases are routinely transferred where, as here, "the principal events occurred in another district and the principal witnesses are located there," *Guccione v. Harrah's Mktg. Servs. Corp.*, No. 06-CV-4361 (PKL), 2009 WL 2337995, at *8 (S.D.N.Y. July 29, 2009); *see also Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014) ("The convenience of the witnesses and the locus of the operative facts of the case are typically regarded as primary factors in the balance-of-convenience inquiry.").

The locus of operative facts is New Jersey. Although Plaintiff has received medical treatment in this District, the "acts or omissions for which Defendants could be held liable occurred" in New Jersey. *Solar v. Annetts*, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010); *see also Donde v. Romano*, No. 09-CV-4407 (DLI), 2010 WL 3173321, at *2 (E.D.N.Y. Aug. 10, 2010) (holding that the locus of operative facts was where the alleged misconduct occurred, not where the plaintiff received subsequent medical treatment); *Guccione*, 2009 WL 2337995, at *8 (same).

Furthermore, nearly all of the key witnesses are located in New Jersey. When considering the convenience of witnesses, courts look at "the materiality, nature, and quality of each witness, in addition to the number of witnesses in each District," *Guccione*, 2009 WL 2337995, at *7, and generally accord greater weight to the convenience of non-parties, *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 366 (S.D.N.Y. 2009). Defendants have identified eight individuals who provided relevant medical care to Plaintiff at FCI Fairton and four who provided care off-site. Of these twelve individuals, ten are in New Jersey, and none are in the Southern

4

District of New York. *See* Teleanu Decl. ¶¶ 2, 4, 6, 8, 10 & Exs. A, C, E, G, I. Plaintiff is correct that not all of these witnesses are likely to provide critical testimony. *See* Pl.'s Opp. at 7. But the fact remains that Plaintiff is the only individual in this District who witnessed the acts or omissions that will determine liability. Nearly every other liability witness—including the non-party off-site providers whose care is at the very heart of this case—is located in southern New Jersey. To the extent Plaintiff is arguing that the convenience of New York-based expert witnesses should be considered, "it is well settled that the location of expert witnesses is irrelevant to a transfer decision." *Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 502 (S.D.N.Y. 2006) (quotation marks omitted).[4]

The Court recognizes that a plaintiff's choice of forum is entitled to some deference and that transferring the case may impose a burden on Plaintiff due to his physical condition and limited financial resources. But these considerations do not outweigh the reasons to transfer. "[W]here, as here, the operative facts have no connection to the chosen district," the weight accorded to a plaintiff's choice of forum is "significantly diminished." *Larca*, 2012 WL 6720910, at *3 (quotation marks omitted). Furthermore, the Court assumes, based on the Government's arguments in support of this motion, that Plaintiff's deposition will take place in the Southern District of New York. *See* Defs.' Reply at 6 ("Presumably, the only time Plaintiff would be required to travel to New Jersey would be for trial."). Plaintiff should thus only need to travel to New Jersey for trial. While Plaintiff has indicated that travel can cause jostling to his arm that is "very painful," Burgos Aff. at 3, his physician has not forbidden him from traveling; she has only encouraged him to minimize travel that would interfere with his rehabilitation schedule, Laufer

---

[4] The location of evidence and familiarity with governing law factors also weigh in favor of transfer. However, these factors do not carry significant weight. *See Capitol Records*, 611 F. Supp. 2d at 368; *Schwartz v. Marriott Hotel Servs., Inc.*, 186 F. Supp. 2d 245, 250–51 (E.D.N.Y. 2002).

5

Decl. Ex. D, at 3; *see also* Burgos Aff. at 3 ("[M]y doctor stated that I cannot travel *significantly* . . . due to my injury." (emphasis added)). The Court is confident that a trial schedule can be set in the District of New Jersey that does not unduly interfere with Plaintiff's rehabilitation.

In arguing against transfer, Plaintiff relies extensively on *Flores v. United States*, 142 F. Supp. 3d 279 (E.D.N.Y. 2015). In *Flores*, the plaintiff alleged that she was mistreated by United States Customs and Border Protection ("CBP") agents while she was in CBP custody at the Mexican border. *Id.* at 282–83. Due in large part to the plaintiff's "limited means and significant medical issues," the court denied a motion to transfer the case from the Eastern District of New York to the Southern District of Texas, despite the fact that the underlying events occurred in Texas. *Id.* at 291. *Flores* is distinguishable from this case for two reasons. First, in *Flores*, the key witnesses in Texas were government employees. *See id.* at 283–86. Although there were non-party medical witnesses that were also located in Texas, the case did not arise out of their acts or omissions. *See id.* Therefore, the convenience of witnesses did not weigh in favor of transfer, as it surely does here. *Id.* at 288. Second, the transfer in *Flores* posed a much more significant burden on the plaintiff because of the distance she would have been required to travel and the seriousness of her medical condition. *Id.* at 286. The plaintiff's doctor opined that travel to Texas would have carried a "risk for potentially deadly illness." *Id.* Plaintiff has not asserted that his condition poses a comparable risk.[5]

---

[5] In his brief, Plaintiff cites to several other cases where courts granted or denied transfer motions due at least in part to a party's medical condition. Pl.'s Opp. at 10–11; *see also Flores*, 142 F. Supp. 3d at 290 (citing the same cases). Like *Flores*, these cases involved severe medical issues. *See Dekle v. Glob. Dig. Sols., Inc.*, No. 15-CV-0069 (WS), 2015 WL 3562412, at *5 (S.D. Ala. June 5, 2015) (plaintiff had pancreatic cancer and was in the middle of chemotherapy); *Lieberman v. Carnival Cruise Lines*, No. 13-CV-4716 (JLL), 2014 WL 3906066, at *4 (D.N.J. Aug. 7, 2014) (plaintiff had stage four terminal cancer, required frequent medical treatment, and was bedridden); *NGC Worldwide, Inc. v. Siamon*, No. 02-CV-1760 (JBA), 2003 WL 1987001, at *1 (D. Conn. Apr. 21, 2003) (defendant had diabetes and was unable to sit for prolonged periods of time; doctor opined "firmly and with medical certainty" that travel would adversely affect plaintiff's health); *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 760 n.2 (S.D.N.Y. 1980)

## CONCLUSION

For the foregoing reasons, Defendants' motion to transfer this action to the United States District Court for the District of New Jersey is granted. The Clerk of Court is respectfully directed to transfer and terminate the case.

SO ORDERED.

Dated:    June 27, 2017
             New York, New York

Ronnie Abrams
United States District Judge

---

(plaintiff suffered multiple skull fractures, which caused "severe secondary encephalopathy, manifested by organic mental effects and a slight paralysis of the right side," and an inability to speak).

7